143 So. 705

**ISAAC BELL, Inc., v. SECURITY INS. CO. OF NEW HAVEN, CONN.**

No. 31811.

July 20, 1932.

Rehearing Denied Oct. 4, 1932.

Modisette & Adams, of Jennings, for plaintiff.

Hawthorn, Stafford & Pitts, of Alexandria, for defendant.

BRUNOT, J.

This is a suit upon a fire insurance policy for $1,000 covering a store building in the town of Kinder, La., that was destroyed by fire, and for penalties and attorney's fees as provided by Act No. 168 of 1908.

The suit was defended upon the ground that the insured rendered the policy inoperative by violating the following provision thereof, viz.: "This entire policy * * * shall be void if * * * with the knowledge

of the insured, foreclosure proceedings be commenced or notice given of a sale of any property covered by this policy by virtue of any mortgage or trust deed," etc.

In the court of original jurisdiction, there was judgment for the plaintiff for $1,000, with legal interest thereon from judicial demand and for costs, but rejecting the plaintiff's demand for the statutory penalty and attorney's fees. An appeal to the Court of Appeal, First Circuit, resulted in an affirmance of the judgment. A rehearing was applied for and refused, and plaintiff applied to this court for a writ of certiorari. The court issued a rule nisi, and in response thereto the record has been sent up, and it is now submitted to us for review.

The record discloses that the plaintiff, Isaac Bell, Inc., purchased building material, which was used in the construction of its store building, from the People's Lumber Company, Inc., and the latter recorded its itemized attested account therefor as provided by law. Thereafter the defendant accepted the risk and issued the policy of insurance now sued upon. Some time later the People's Lumber Company, Inc., obtained a judgment against the plaintiff for the sum of its recorded account, with interest thereon and costs, and a decree recognizing its lien and privilege upon the building and the site occupied by it, for said amount, and, when the judgment became final, it caused a writ of fieri facias to issue thereon, and the insured building and site on which it is situated were seized under the writ and advertised for sale. Pending the sale, the building was destroyed by fire. The required proof of loss was furnished to the defendant, but payment thereof was resisted, and this suit followed.

District Judge Porter and Judge Elliott, of the Court of Appeal, each found the facts, substantially, as we have stated them, and each judge has written a carefully considered and soundly reasoned opinion upon the law of the case, except as to the statutory penalty and attorney's fees.

■ With respect to the clause of the policy, quoted supra, which is relied upon by the defendant company, they have clearly directed attention to the distinction between a seizure and sale under a writ of fieri facias and the proceeding for executory process, and have cited the authority supporting their conclusion that the forfeiture clause of the policy is limited in its application to proceedings pertaining to mortgages and deeds of trust alone. They found that the policy sued upon and the forfeiture clause thereof are identical with the language of the policy in the case of Stenzel v. Pennsylvania Fire Insurance Co., 110 La. 1019, 35 So. 271, 272, 98 Am. St. Rep. 481, and that the defense urged in that case is the same as the defense urged in this case. In the Stenzel Case the court said:

"We are further of opinion that there was not given to plaintiff a notice of sale by virtue of a mortgage, within the meaning of the clause that the policy should be void 'if notice be given of sale of any property covered by this policy by virtue of any mortgage or trust deed.' This clause must be read in the light of the fact that in some states, and notably in Pennsylvania, the home of the defendant company, there is such a thing as enforcing a mortgage extrajudicially, by simply giving notice of sale, and that the policy in which this clause is found is what is known as a 'Standard Policy'; that is to say, not a document drawn up specially to evidence this

particular contract of insurance, but a printed form used for all the insurance written by the defendant—in fact, imposed upon the defendant by a statute of the state of its domicile.

"As to standard policies, see 9 Am. & Eng. Ency.' p. 222. As to enforcing mortgages by mere notice of sale, see 9 Ency. Plead. & Prac. pp. 111, 114, 165, 166, 783. Bearing, then, in mind that in a number of states, and notably in the home state of defendant, mortgages may be enforced in two ways—by foreclosure proceedings, and by an extrajudicial giving of notice of sale—we readily see what is meant by the stipulation, 'if foreclosure proceedings be commenced or notice given of the sale of any property covered by this policy by virtue of any mortgage or trust deed.' The scope and meaning of the stipulation is then, in reality, this: That the policy shall be void if the insured confers upon the mortgagee the right to enforce the mortgage extrajudicially, by merely giving notice of sale, and such mortgagee proceeds to enforce the mortgage in 'that manner. Evidently the condition is one which can, in the nature of things, have no operation in this state, where such a mode of enforcing mortgages is unknown; and, as a consequence, in this state the clause stands in the policy as mere harmless surplusage."

We think the ruling in the Stenzel Case is sound, and that it should be adhered to. In that case, as in this, no proceeding was commenced under a mortgage or trust deed. What was done in both cases was the issuance of execution to satisfy a judgment. It is true that the recordation of a judgment creates a judicial mortgage, but, in Louisiana, judicial mortgages are not foreclosed. The only way in which a judgment may be executed in this state is by the seizure and sale of property under a writ of fieri facias. The case of Jones & Pickett, Ltd., v. Michigan Fire & Marine Ins. Co., 132 La. 847, 61 So. 846, is not in conflict with the Stenzel Case.

█ Relator's sole purpose in applying to this court for a writ of review is to have that part of the judgment disallowing its demand for penalties and attorney's fees reversed. It is contended that Act No. 168 of 1908 is mandatory, and that the decision of the Court of Appeal in this case, on that point, is in conflict with the decision of the Orleans Court of Appeal in the case of Buccola v. National Fire Insurance Company of Hartford, Connecticut, 18 La. App. 353, 137 So. 346. We find that the decisions of the two Courts of Appeal are in conflict, but this court decided in Whiteside v. Lafayette Ins. Co., 143 La. 675, 79 So. 217, that section 3 of Act No. 168 of 1908 is mandatory and must be enforced in every case where any part of the loss in excess of the sum admitted to be due is recovered in a court of competent jurisdiction. In the Buccola Case the Orleans Court of Appeal held section 3 of the act to be mandatory. In this case, the district judge and the Court of Appeal, First Circuit, held that the enforcement or nonenforcement of the section was addressed to the exercise of the sound discretion of the court, and where, as in this case, the question presented by the defendant was a debateable one, the defendant should not be penalized.

Section 3 of the act is clear and unambiguous. It is written into and forms a part of the insurance policy. It is as follows:

"Be it further enacted, etc., That whenever any loss or damage shall be suffered in this

State from fire by any person, firm or corporation upon property insured under a policy of insurance of any fire insurance company doing business in this State, it shall be the duty of the fire insurance company that has issued the policy or policies upon receipt of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, or if the said proofs of loss are not satisfactory to the company, it shall be the duty of the company to proceed under the terms of the policy or policies to ascertain and adjust the amount of the loss and its liability under its policy or policies and to make payment of the amount due under the policy or policies to the insured within sixty days from the date upon which it received the proofs of loss offered by the assured, and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent. damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss; provided that whenever the insurance company shall pay to the insured within sixty days from the date upon which it received the proofs of loss offered by the assured the amount which its adjustor or agent has determined· or admitted to ·be due, then in that case the insured shall only recover from the said insurance company the difference between the amount thus paid him and the amount judicially ascertained to be actually due under the policy together with 12 per cent. damages on said difference and all reasonable

attorney's fees for the prosecution and collection of such loss."

Section 4 of Act No. 168 of 1908 provides that the act shall become a part of the policy contract as fully as if incorporated therein, and that any condition of the policy contract in contravention of the provisions of the act shall be void and of no effect.

We think that section 3 of Act No. 168 of 1908 is mandatory and must be given effect in every case where the insurance company resists payment of the whole or any part of a loss covered by its policy, provided the insured judicially recovers more than the insurer admits to be due and timely tenders or pays to him.

In this case the defendant resisted payment of the whole or any part of the plaintiff's loss.

It is difficult to determine what would be a reasonable fee in a case of this kind. Ten per cent. of the amount recovered would be a reasonable fee for obtaining a money judgment in an ordinary suit. In this case the defendant appealed, and plaintiff necessarily had to employ counsel to represent it in the Court of Appeal, but its application to this court for a writ of review was entirely voluntary on its part. It was evidently satisfied with the judgment of the district court, for it did not appeal from that judgment. We think, under the circumstances, the allowance of $150 as attorney's fees is a reasonable allowance.

For the reasons stated the judgments under review are reversed in so far as they reject the plaintiff's demand for the 12 per cent. penalty and attorney's fees, and it is now decreed that plaintiff have judgment against the

defendant for 12 per cent. of $1,000 with legal interest thereon from judicial demand, and for $150 as attorney's fees, and, as thus amended, that the judgment be affirmed at relator's cost.

## On Rehearing.

PER CURIAM.

Plaintiff and defendant, the former being the relator herein, have applied for a rehearing in this case. The application of defendant is refused. The only ground presented by plaintiff which calls for our attention is that, although it was largely successful in its application to this court for a writ of review, nevertheless we have cast it for costs. This was done inadvertently. Plaintiff having obtained, in this court, a substantial modification of the judgment of the Court of Appeal, is entitled to judgment for costs in this court, and also in the Court of Appeal. A rehearing is unnecessary to make this change in our decree.

For these reasons, our former decree is amended by casting defendant for the costs of suit in this court and the Court of Appeal. With this amendment, plaintiff's application for a rehearing is refused.