closed its plant that plaintiff began to complain.

For the reasons assigned, the judgment appealed from is affirmed at plaintiff's costs.

160 So. 302

HAMMETT et al. v. FIRE ASS'N OF PHILADELPHIA.

No. 33240.

March 4, 1935.

Dimick & Hamilton, of Shreveport, for, plaintiffs.

Hardin & Coleman, of Shreveport, for defendant.

HIGGINS, Justice.

This is a suit by the owner of a Chevrolet automobile and his mortgage creditor to recover from the defendant insurance company the sum of $400, representing the value of the automobile which is alleged to have been destroyed by fire, together with statutory penalties and attorney's fees, as provided for in Act No. 59 of 1921 (Ex. Sess.).

The defendant filed an exception of prematurity, which was overruled. Defendant then pleaded that Act No. 59 of 1921 (Ex. Sess.) was unconstitutional. Defendant in its answer admitted the issuance of the policy, the partial destruction of the automobile by fire, that proof of loss was submitted on blank forms furnished by the company, and then reiterated its defense of prematurity, denying liability, and averring that, if it were liable for any amount to the plaintiffs, its indebtedness was not in excess of $150.

There was judgment in favor of the plaintiffs for the sum of $390 for the loss of the automobile, but the claim for penalties and attorney's fees was rejected.

The defendant appealed, and the plaintiffs answered the appeal, asking that the judgment be amended so as to allow penalties and attorney's fees.

The Court of Appeal amended the judgment by allowing the penalties and $100 as a reasonable attorney's fee, and affirmed it in all other respects.

The defendant applied to this court for a writ of certiorari, which was granted, and the case is before us for review.

The Court of Appeal correctly found the facts of the case to be as follows:

"The record shows that the plaintiff Hammett was the owner of a Chevrolet automobile upon which plaintiff Fowler Commission Company, Incorporated, had a chattel mortgage. This automobile was insured by the defendant company against loss by fire or theft, on October 13, 1931, for a period of one year, for the amount of $400.00. The automobile was destroyed by fire on January 31, 1932; and on the same day plaintiff Hammett notified the representative of the insurance company. The loss was investigated, and plaintiff furnished with blanks on which to make the proof of loss. Upon these forms plaintiff made proof of loss and filed same with the defendant on March 25, 1932.

"Plaintiffs and defendant were unable to agree as to the value of the car and the loss and damage from said fire, and on May 13, 1932, defendant tendered to plaintiffs a written proposal for an appraisal, and at the same time named R. W. McFarlane as the appraiser for defendant. Plaintiffs immediately selected Valentine Daniels as their appraiser. By reason of the failure of the appraisers to agree upon an umpire, it was not until July 18, 1932, that an umpire was selected. This was more than two months after the signing of the appraisal agreement; more than three months after the filing of proof of loss; and nearly six months after the fire. The two appraisers and the umpire were unable to agree upon the said loss, so the appraisal came to naught.

"On July 23, 1932, defendant wrote plaintiffs and demanded another appraisal, in which letter it named its appraiser. Plaintiffs declined to have another appraisal, and on August 2, 1932, filed this suit."

In the agreed statement of facts submitted in connection with the exception of prematurity, it was admitted that neither the plaintiffs nor defendant were to blame for the failure of the appraisers and the umpire to reach an award.

The policy contained provisions to the effect that, in the event the assured and the company failed to agree as to the amount of the loss or damage, either party to the contract had the right to request an arbitration. The award resulting from the arbitration was to be binding upon both parties.

The following clauses appear in the policy:

" * * * The loss shall in no event become payable until sixty days after the no- tice, ascertainment, estimate and verified proof of loss herein required have been received by this company; and if appraisal is demanded, then, not until sixty days after an award has been made by the appraisers. * * *

" * * * No suit or action on this policy, or for the recovery of any claim hereunder, shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the foregoing requirements. * * *

"Any and all provisions of this policy which are in conflict with the statutes of the State wherein this policy is issued, are understood, declared and acknowledged by this Company to be amended to conform to such statutes."

Section 3 of Act No. 59 of 1921 (Ex. Sess.) reads as follows:

"That whenever any loss or damage shall be suffered in this State from fire and theft by any person, firm or corporation, upon property insured under a policy of insurance of any fire insurance or theft insurance company doing business in this State it shall be the duty of the fire or theft insurance company that has issued the policy or policies upon receipts of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, or if the said proofs of loss are not satisfactory to the company, it shall be the duty of the company to proceed under the terms of the policy or policies to ascertain and adjust the amount of the loss and its liability under the terms of the policy or policies and to make payment of the amount due under policy or policies to the insured within sixty

days from date upon which it received the proofs of loss offered by the assured, and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, twenty-five per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss; provided that whenever the insurance company shall pay to the insured within sixty days from the date upon which it received the proofs of loss, offered by the assured the amount which its adjuster or agent has determined or admitted to be due, then in that case the insured shall only recover from the said insurance company the difference between the amount thus paid him and the amount judicially ascertained to be actually due under the policy together with twenty-five per cent damages on said difference and all reasonable attorney's fees for the prosecution and collection of such loss."

Under the very terms of the policy, if there is any conflict between its provisions and Act No. 59 of 1921 (Ex. Sess.), the statute shall govern.

It clearly appears from the above-quoted section 3 of the statute in question that the defendant was required to pay the amount due within 60 days from the date it received the proofs of loss submitted by the insured on the blanks furnished by the insurance company. If the defendant believed that the assured's claim was excessive, it had the right, after determining what it considered was the proper amount of the loss or damage, to tender that sum and litigate over the balance, or to ask for an arbitration of the question. In the event it elected to ask for an award through appraisers, the arbitration must be concluded within 60 days, because the arbitration proceedings cannot exceed the unqualified period of 60 days within which the company is required, under penalty, to satisfy itself as to the amount of the loss and pay the assured. The provision in the policy granting the insurer the right to withhold payment until 60 days after the award of the appraisers is plainly in contravention of the unequivocable language of section 3 of the statute, which unqualifiedly required the insurance company to pay the loss within the 60-day period, and therefore that clause is legally ineffective. The second arbitration having been requested more than 60 days from the date that the proof of loss was filed with the company, plaintiffs were within their rights in refusing to accede thereto.

The instant case is a good example of the anomalous situations which will result from placing upon the statute the strained construction sought by the defendant. If a second arbitration were requested and it failed, defendant could then ask for a third, and so on ad infinitum. Although the fire occurred on January 31, 1932, and the suit was not filed until August 2, 1932, the defendant at no time tendered the plaintiff any amount, and elected to compel the plaintiff to sue for the full amount claimed. So the practical result is that up to the present time the plaintiffs have not been paid one penny of the loss claimed.

We conclude, as the Court of Appeal, that the exception of prematurity was not well founded and was properly overruled. Mayer v. Security Union Ins. Co., 8 La. App. 308; New v. Union Automobile Insurance Co. (La. App.) 137 So. 563; Hart v. Springfield Fire & Marine Ins. Co., 136 La. 114, 66 So. 558.

The Court of Appeal also correctly allowed the penalties and attorney's fees as provided for by Act No. 59 of 1921 (Ex. Sess.). Bell v. Security Ins. Co., 175 La. 599, 143 So. 705; Garnier et al. v. Ætna Ins. Co., 181 La. 426, 159 So. 705, decided February 4, 1935.

██ Defendant contends that Act No. 59 of 1921 (Ex. Sess.) is unconstitutional, because it is arbitrary in that it requires the payment of the loss within 60 days, although the arbitration proceedings are incompleted; that it is class legislation, because it only penalized companies writing automobile insurance for failure to pay within 60 days, and insurance companies writing other kinds of insurance are not thus penalized, or penalized in a much less degree, and because the penalties and attorney's fees are oppressive, unreasonable, and confiscatory.

The Legislature has the right to classify businesses for the purpose of regulation. The statute applies equally to all insurance companies writing fire and theft insurance on automobiles in Louisiana. It is therefore not class legislation, because it is a reasonable and fair classification of this particular line of business. Monteleone v. Seaboard Fire & Marine Ins. Co., 126 La. 807, 52 So. 1032.

The penalty of 25 per cent. is only assessed where the court concludes that the plaintiff is entitled to recover in excess of the amount

the insurance company tendered. The attorney's fees must be reasonable under the very language of the statute. We fail to see where the statute is oppressive, arbitrary, or confiscatory, when all it seeks to do is to compel the insurance company to pay a just and legal obligation within a reasonable period of time; i. e., 60 days.

It is our opinion that, within 60 days from the time that the proofs of loss are filed with the company, it has an adequate opportunity to determine the extent of its liability, because it must be borne in mind that the act applies to insurance on automobiles. The claims therefore are not large or involved. No doubt the Legislature was influenced to impose the penalty of 25 per cent., because it took cognizance of the fact that such claims were not for large amounts.

It must also be borne in mind that the insurance company, under the provisions of the statute, can avoid the imposition of the major part of the penalty by tendering the amount it determines is due. There can be no good reason why the insurance company should withhold that amount from the insured. The company can likewise avoid the entire penalty by tendering the correct amount of the loss. Hardy v. Commercial Standard Ins. Co., 172 La. 500, 134 So. 407; Life & Casualty Ins. Co. v. McCray, 291 U. S. 566, 54 S. Ct. 482, 78 L. Ed. 987.

It is our opinion that the act is constitutional.

The trial court and the Court of Appeal found that the car was worth the sum of $400 at the time it burned, and thereafter, in its damaged condition, only $10. Plaintiffs were awarded the sum of $390. Their

conclusions are well supported by the record. The Court of Appeal properly amended the judgment of the lower court, so as to allow the 25 per cent. penalty and a reasonable attorney's fee of $100, which is fair.

For the reasons assigned, the judgment is affirmed.